Hello. May it please the court. My name is Daniel Troyton and I represent the plaintiff appellants in this matter. And throughout the oral argument they'll probably refer, just like we did in the briefs, to the plaintiff appellants and their collectively as Nader. Why don't you say Nader and then we'll include the other guy. All right. We got Nader, Camille, a couple other candidates, a couple of supporters. And, well, I think this case primarily turns on whether when Hawaii or any state, for that matter, establishes a statewide signature requirement for political party ballot access, whether that constitutes a threshold that other statewide ballot access signature petitions, if that establishes a threshold that can't be passed for those other statewide ballot access petitions. Nader believes that it does and relies primarily on the reconciliation of three cases. We cited a number of cases in our briefs, but I think these three epitomize the thrust of the argument. Anderson v. Celebresi, Cromer v. South Carolina case, that's the fourth district decision, and the Socialist Workers Party case from 1979, U.S. Supreme Court. Anderson was a case where he was a candidate in Ohio who was kept off the ballot because the deadline to submit his nomination petitions to the Ohio Board of Elections was in March. And he did not like the major party candidates that were chosen in that election and chose to run it as an independent, but he made the decision after the deadline. The question the Supreme Court answered was whether that was a severe burden on his First Amendment right to free speech. And during the course of that opinion, they discussed the historical importance of independent candidates. And some of the important ideas that get influxed into the major debates in this country include, from independent candidates or minor political parties, they include things like women's suffrage, the right to immunize, child labor laws going way back to the 19th century. And basically they argued that it was a severe burden and Anderson should be allowed on the ballot even though he submitted his petitions in the summertime. The Fourth Circuit in Cromer considered a similar case, the Cromer v. South Carolina case. And in this case, I encourage the court to adopt its reasoning in this matter because in referring to the historical analysis that Anderson did, they talked about independent candidates being a safety valve for political expression. And in Cromer, they talked about how it's important to protect independent candidates more so than new political parties. And prior to 1999, Hawaii's laws sat well with this sort of concept, protecting independent candidates more so than new political parties. Back in the 90s and prior, Hawaii law, they set a requirement of 1% for new political parties, 1% signature requirement of the registered voters that exist in the state. Independent candidates, on the other hand, they had to get 1% of the votes in the prior election. So for a presidential candidate, the last prior election, number of votes, 1%, they got on the ballot if they submit that number of signatures. And, of course, under Cromer, if you regulate new political parties. Why is that very burdensome? It's not a – in the context of whether it's a severe burden, it's not individually. But the concept here is that when they pass these laws regarding statewide ballot access, the legislature is basically weighing two policies. One policy is what threshold do we need to keep frivolous candidacies and frivolous minor parties off the ballot so that we can avoid voter crony and voter confusion? The second policy is that they do want choices on the ballot, and that's always a good thing. And so in 1999, that's when the Hawaii legislature – Well, we shouldn't treat your argument as simply an equal protection argument. I do not understand how it is that we're supposed to weave equal protection into the burdensome due process argument. I mean, primarily, it is an equal protection argument. So we can skip Anderson, and for that matter, Cronin, and they don't speak to this. The question is to what extent does the state have a justification for treating these two categories differently, just a pure equal protection? Right, and I think Socialist Workers' Party primarily deals with equal protection. I know Cronin's opposition brief talked about how basically that there's no – they're not similar enough for equal protection to apply, but I don't believe that that's the case. In this situation, what you have is both new political parties and independent candidates trying to get on the ballot and enter the – I guess fray, if you will – enter the debate, the election debate. Is there any authority whatsoever that would support the proposition that what the state of Hawaii requires for an independent candidate is burdensome? Even in isolation, is that number of signatures going to be deemed burdensome? It wouldn't be under – Genesis said that 5% is not burdensome. So 1% probably isn't burdensome either. Right, it's not individually burdensome. But no, that's why I think we've got a pure equal protection argument. Yeah, I agree. Okay, so let's focus on equal protection. Why is it the state of Hawaii can't say, look, neither of these numbers is burdensome, but we think there's an affirmative benefit to the state of permitting new political parties as opposed to independent candidacies because we think they speak to a broader range of offices. They potentially, in theory at least, speak to a movement that's going to continue over several years, not a one-shot effort. So we're going to set this standard here, not burdensome under the law, but we're going to make it even easier. This standard is independent candidate. We're going to make it even easier for someone to form a new party by having a lower signature requirement there. Why doesn't that pass muster under the equal protection clause? I think that the logic that I know Cromer speaks to whether it's a severe burden or not, but I think the logic that it's appropriate to regulate political parties because they potentially can be in existence ad infinitum as long as they satisfy the grandfather clauses. And independent candidates, on the other hand, are, according to Anderson and Cromer, are the safety valve that you can inject into the equation after the major party candidates are decided. And, for example, the new political parties in Hawaii cannot be, they have to submit their petitions in April, I believe. Well, isn't it important, they have to go through a second process which they form the party and then they've got to nominate their candidates. So it makes sense to have a longer period because it may take time to organize the candidates that they're going to advance. So that seems to be perfectly appropriate and perfectly logical. And as to individual candidates trying to get on the ballot, they don't have to go through that. So 60 days seems okay for that. Right, but I think the primary issue is, you know, what is the, the state sets the minimum burden of what do we need to avoid ballot confusion and overcrowding on the ballot. And they do that, they did that in 1999 when they decided to change from one percent to one-tenth of one percent for the new political party ballot access. At that point... You're suggesting the state can't change. Okay, let's hypothetical. The state of... We can take it outside the Ninth Circuit. The state of Kansas decides, okay, we're going to set the level of one-tenth of one percent. And then a few years later they decide, nah, that's not really high enough. We're going to move it to one percent. Is there any case law that would say that's burdensome, given that the case law seems to suggest anything up to five percent is okay? No, I think the case law, neither one of those is burdensome in and of themselves. Okay, well, then I'm having trouble seeing why you keep saying, you know, in 1999 the state of Hawaii said this and that was okay, but then they changed. Well, I think... As long as what they changed to doesn't violate some established standard, what's the problem? Well, I think here the change resulted in independent candidates now are treated significantly different. Instead of being slightly less regulated, now they're substantially more regulated than independent parties. Well, it's much more regulated. They have more signatures they have to provide, but the regulation is pretty much the same. Right. Well, access to the ballot is primarily what our concern is. And, of course, after the April, if you decide to run for political office, now all of a sudden you have this higher burden for some reason later in the summer to be considered a non-frivolous candidate. So we've given you reasons why the state of Hawaii could decide to treat these categories differently. If you expect a reveal here, you're going to have to give us a reason why the state can't rationally make that differentiation. I think in this case they can't rationally state that, you know, access to the ballot for political parties and access to the ballot by independent candidates, those are very similar, I believe, questions. No, I just gave you reasons why the state could say they're different. They could decide that political parties reach more than a single office, that political parties have the possibility of an ongoing movement, give voters of the state more opportunities over a period of several elections. Right. It's not, you know, it's, what's wrong with those reasons? I mean, I guess one of the questions here is whether strict scrutiny or rational basis applies to the analysis. And I believe strict scrutiny does apply because these are voting rights. Well, what difference in this case would strict scrutiny make? We look at it, we find that it's perfectly reasonable, it's not overburdensome. I believe, well, what we have is two separate comparisons of the independent candidates versus political parties. So why does that qualify for strict scrutiny? Because you would uphold or maintain, requiring a much greater number, five and a half times as much under the 2004 facts that we're issuing, for an independent candidate to get on the ballot and be considered non-frivolous when a political party can be considered non-frivolous for only 677. We haven't answered the question, I don't think. What's the basis for saying the standard is strict scrutiny as opposed to rational basis? And, of course, my addition is even if you're applying strict scrutiny, now, is it a problem? Okay, well, I just, well, because of the, it directly affects fundamental rights and your access to the ballot, voters' rights to choices on the ballot. Do you have any authority that says every access to ballot case requires application of strict scrutiny? There's no rule about that with every ballot case. But isn't that the argument you just now made to us? That your reason for applying strict scrutiny is it applies, it affects voting rights. But, in fact, there's no authority that says the fact that you affect voting rights requires strict scrutiny. Well, I mean, I don't mean to say that it requires it all the time, but the Socialist Voters' Party and the Corona versus South Carolina case is the theory, you know, the ideas that they express that independent candidates' rights should be protected more than political party rights. And that's primarily where I look at the comparison between the two. And when I look at Hawaii and see that they're not protecting independent candidates' rights more than political party rights, and that's why, that's where our position lies. I have a minute and a half left. I'll reserve. All right. Thank you. Thank you. Good morning. Sorry. Good morning, honors. May it please record my name is Aaron Schumann and I represent the defendant appellee chief election officer. Based upon the questioning of the plaintiff appellant, I think it would be wise at this point just to answer any questions you might have versus going through the little speech I had here. Why is it rational to allow so few signatures to form a political party? Well, it takes quite a bit more for an independent candidate. Well, first of all, I'd like to clarify that they are separate processes, an independent candidate is separate from a political party, which represents a variety of interests, has a long history, can have various candidates. But more importantly, I think it's incorrect to say essentially there's a difference in the amount of signatures right off the bat, 3711 versus 677, because in order to be on the ballot as a presidential candidate, yes, you can be an independent person, get 3711 signatures. But a political party in and of itself, just getting 677 signatures does not necessarily mean you've provided a significant modicum of support to justify being on the ballot. You also have to show under 11-113 that there's a national party out there, that there's at least a fellow party in another state, the NATO party, whatever party you want to call it. So it's not really you get 677 and you can put your name on the ballot as president. You have to show a significant modicum of support, which is 677, you create your own party, plus you show you're part of a national movement. So I really don't accept the premise that you just have to get less signatures in order to be on the ballot if you choose to become a party versus 3711. They're just different processes, different purposes. They're not necessarily significantly different. They're just different ways to show support, basically. OK, I guess I'll just submit the matter at this point. Thank you for your time. I guess there wasn't much opposition, so I guess I'll submit the matter if you have any. Some questions submitted. I don't care if you want to break. Move on. We now come to the United States versus. Garagana and others. You know. You know. You know.
judges: Fletcher B. , Pregerson, Clifton